UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES E. DOCKIINS, | CIVIL ACTION NO. 3:CV-05-0311 |
| Petitioner | (Judge Nealon) |
| v. | |
| PENNSYLVANIA BOARD OF, PROBATION AND PAROLE. | |
| Respondents | |

FILED
SCRANTON
JAN 17 2006
PER _____
DEPUTY CLERK

## MEMORANDUM AND ORDER

Presently before the court is a petition for writ of habeas corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254, by Charles E. Dockins ("Dockins"), an inmate presently confined in the Mahanoy State Correctional Institution, Frackville, Pennsylvania. Dockins challenges the denial of his parole by the Pennsylvania Board of Probation and Parole ("the Board"). Pursuant to this Court's Show Cause Order issued on February 18, 2005, the Respondent filed a response to the petition with a supporting brief on April 1, 2005. (Docs. 10, 11). On April 18, 2005, Dockins filed a traverse. (Doc. 12, 13). The petition is ripe for consideration and, for the reasons that follow, will be denied.

## Background

On January 26, 1967, Dockins was convicted and sentenced to a term of incarceration of one to three years, after pleading guilty to Aggravated Robbery and Conspiracy in Philadelphia County. He served his maximum sentence, which expired on January 26, 1970. (Doc. 10, Exhibit 1, Affidavit of Yvonne Bricker,

Pennsylvania Board of Probation and Parole Staff Technician, at ¶¶ 4-10).

On August 24, 1972, Dockins was sentenced in Philadelphia County to consecutive ten to twenty year terms of incarceration for Aggravated Robbery and Burglary. Id. at ¶ 11. On December 4, 1972 Dockins was again sentenced in Philadelphia County to a four to ten year term of incarceration for Aggravated Robbery, a three and one-half to seven year term of incarceration for Assault and Battery with Intent to Murder, a one and one-half to three year term of incarceration for Aggravated Assault and Battery and a one to two year term of incarceration for Assault and Battery. Id. at ¶ 12. The December 4, 1972 sentences were ordered concurrent to each other and to the August 24, 1972 sentences. Id. at ¶ 13. At this time Dockins' controlling minimum sentence was September 15, 1991 and his controlling maximum sentence was September 15, 2011. Id.

On October 16, 1989, Dockins failed to return to the State Correctional Institution, Graterford, Pennsylvania, from a furlough. He remained a fugitive until April 30, 1993, when he was located and returned to SCI-Graterford. Id. at ¶¶ 14, 15.

On December 1, 1993, Dockins received a concurrent sentence of twenty-five months to five years for his escape from SCI-Graterford. His sentence was then recalculated by the Pennsylvania Department of Corrections to reflect the time that he was a fugitive, such that his new minimum sentence became January 1, 1996 and his new maximum sentence became February 3, 2015. Id. at ¶¶ 16, 17.

On December 9, 1999 Dockins was granted parole and was released

from prison on April 3, 2000. Id at ¶ 19. On January 12, 2001, Dockins was declared delinquent when he could not be located by his parole agent and his whereabouts became unknown to the Board. Id. at ¶ 20. On July 17, 2001, Dockins was located in Camden, New Jersey. Id. at ¶ 21. By Notice of Board decision, dated September 20, 2001, Dockins was recommitted to a state correctional institution as a technical parole violator to serve twelve months backtime for multiple technical parole violations. (Doc. 10, Notice of Board Decision). He was scheduled for review on or after July, 2002 and his parole violation maximum date was calculated to be August 8, 2015. Id.

Dockins was considered for parole in August, 2002. (Doc. 10, Notice of Board Decision dated August 21, 2002). The Board denied parole, determining that "the fair administration of justice cannot be achieved through your release on reparole" and set his next parole review in or after July, 2003. Id. The Board stated that in the next review, it would consider: (1) whether Dockins maintained a favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed the Department of Corrections prescriptive programs. Id.

On August 26, 2002, Dockins filed a request for administrative relief from the Board pursuant to 37 Pa. C.S. § 73. (Doc. 1, Ex. C). On September 11, 2002, Petitioner's request was denied. Id. On October 11, 2002, Dockins filed an appeal of the Board's denial of relief to the Commonwealth Court of Pennsylvania. Id. By Order dated October 21, 2002, the Commonwealth Court dismissed the

appeal, determining that "the decision to grant or deny parole is wholly a matter within the discretion of the PA Board of Probation and Parole and not subject to judicial review." (Doc. 10, Exhibit 2).

On June 12, 2003, Dockins filed a petition for writ of mandamus in the Commonwealth Court of Pennsylvania. (Doc. 10, Exhibit 3). By Order dated August 14, 2003, the Commonwealth Court dismissed the petition for failure to state a claim for relief. Id.

The Board conducted a second reparole review on July 24, 2003. (Doc. 10, Notice of Board Decision). The decision was to deny Dockins reparole. The Board's reasons to deny parole included (1) Dockins' version of the nature and circumstances of the offenses committed; (2) his refusal to accept responsibility for the offenses committed; the recommendation made by the Department of Corrections; and (3) his interview with the hearing examiner and Board Member. Id. Dockins' next parole review was set for August, 2004, or later. The Board advised Dockins that in the next review, it would consider: (1) whether Dockins had maintained a favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed the Department of Corrections' prescriptive programs. Id.

On September 2, 2003, Dockins filed an Application for Extraordinary Relief in the Pennsylvania Supreme Court, which was denied by Order dated July 13, 2004. (Doc. 1, Exhibits I, L).

The Board again interviewed Dockins on September 23, 2004, and

denied reparole. (Doc. 10, Notice of Action dated September 23, 2004). The decision stated the reasons for the denial as follows: (1) Dockins' version of the nature and circumstances of the offenses committed; (2) his refusal to accept responsibility for the offenses he committed; (3) his lack of remorse; and (4) prior history of supervision failures. Id. The Board stated that in the next interview, it would consider (1) whether Dockins had received a favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed the Department of Corrections prescriptive programs. Id.

On February 11, 2005, Dockins filed the instant petition in which he challenges the Board's adverse decisions in its review of his reparole. He raises the following four grounds for relief:

1. Denial of due process for failing to grant Petitioner reparole at the expiration of the service of the twelve months backtime he received for violating the conditions of his parole.

2. The enactment of 42 Pa.C.S. § 9714(g) and 61 P.S. § 331.21(b)(1) violate the ex post facto clause and Sections 7, 19, 20, and 22 of the Parole Act, 61 P.S. §§ 7, 19, 20, 22.

3. The Board applied "stipulations" that are not statutory law in denying him parole.

4. the "New DNA Act, No. 2002-57" entitled him to a writ of habeas corpus.

(Doc. 1, petition).

Subsequent to the filing of the petition, on November 1, 2005, the Board

again reviewed and denied Dockins reparole. (Doc. 14, Notice of Action dated November 1, 2005). The decision stated the reasons for the denial as follows: (1) Dockins' minimization/denial of the nature and circumstances of the offenses committed; (2) his refusal to accept responsibility for the offenses he committed; (3) his lack of remorse; and (4) prior history of supervision failures. Id. The Board stated that in the next interview, it would consider (1) whether Dockins had received a favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed the Department of Corrections prescriptive programs. Id.

**Discussion**

    A.    **Exhaustion of State Court Remedies**

Generally, a habeas petitioner must show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the sate courts, or that circumstances exist rendering the available state court process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b). Recently, in DeFoy v. McCullough, 393 F.3d 439, 444 (3d Cir. 2005), it was held that "an action for mandamus remains viable as a means for examining whether statutory requirements have been altered in a manner that violates the ex post facto clause." DeFoy, 393 F.3d 439, 444 (3d Cir. 2005), quoting Coady v. Vaughn, 770 A.2d 287, 290 (2001). Following DeFoy, the Pennsylvania Supreme Court decided the case of Cimaszewski v. Bd. of Prob. & Parole, ___ Pa. ___, 868 A.2d 416, 427 (2005), wherein it was recognized that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the

amendments if it can be shown that the amendments "create [] a significant risk of prolonging his incarceration." These recent developments indicate that there are state court remedies available to raise and ex post facto claim such that exhaustion should not be excused.

In the instant action, while it is apparent that Dockins challenged his reparole denials by filing an appeal of the denial, and a mandamus action in the Commonwealth Court of Pennsylvania, Dockins never challenged the enactment of 42 Pa.C.S. § 9714(g), 61 P.S. § 331.21(b)(1), or the New DNA Act, in any of his prior actions. Thus, he has never fairly presented these issues to the Pennsylvania state courts.

Moreover, Dockins failed to seek appellate review of either of the dismissals of his Commonwealth Court actions, despite the fact that he possessed a right of direct appeal. See 42 Pa.C.S. § 723(a). Nor has Petitioner raised an ex post facto claim in the Pennsylvania Commonwealth Court with respect to his most recent, September 23, 2004 and November 1, 2005, parole denials. It is apparent, therefore, that Petitioner has failed to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-45 (1999). Notwithstanding the failure to exhaust, the Court will consider the petition as the claims raised in the petition are clearly without merit.[1] See 28 U.S.C. §

---

[1] Recently, the Supreme Curt ruled that an ex post facto claim of the nature presented here may be pursued in an action under 42 U.S.C. § 1983. Wilkinson v. Dotson, — U.S. — , 2005 WL 516415 (2005). There is no need to exhaust state court remedies before filing a § 1983 action. Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be

2254(b)(2)(a federal court can deny a habeas petition "on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

### B.    The Merits of Dockins' Ex Post Facto Claims

Dockins' challenges to the denial of parole his parole is based on the argument that the Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendment to 61 Pa.Stat. §331.1, the statute governing parole standards. "The Ex Post Facto clause of the United States Constitution applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). Ex post facto restrictions apply to parole matters. See Garner v. Jones, 529 U.S. 244, 250-255 (2000).

In 1996, the Pennsylvania legislature amended the section of its parole law setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and

---

available to pursue such a claim, the majority ruling did not resolve this issue. Whether habeas corpus relief is or is not available with respect to the claims advanced by Dockins is not presently before this Court. In any event, the issue is academic because the underlying claims lack merit whether brought in habeas or under § 1983.

foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[2] Before then, section 331.1 made no mention of pubic safety and, in fact, declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[3]

In <u>Mickens-Thomas I</u>, our Court of Appeals assessed the impact of the amended statute as construed by the Board and applied in that case. The court

---

[2]   After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administra- tion of justice by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999).

[3]   Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

explained that the essential inquiry was "whether, in practice, the new language has altered the fundament for reviewing parole applications." Id. at 384 (emphasis added). In finding an Ex Post Facto violation in Mickens-Thomas I, the court observed that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." Id. at 393. The opinion stated:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387. Of substantial concern to the court was the fact that the evidence demonstrated that the Board interpreted the amended statute to "mandate foremost the consideration of public safety." Id. at 391. "The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. Notwithstanding this conclusion, the court also acknowledged a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (2002), which concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. Id. However, our Court of Appeals concluded that the Winklespecht decision, "made after the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." Id. (emphasis in original.)

In <u>Mickens-Thomas I</u>, as well as in other rulings issued by the Third Circuit Court of Appeals, the appropriate remedy for an Ex Post Facto violation has been to remand the matter to the Board for reconsideration, applying the pre-1996 law.[4] <u>Hart v. Pa. Bd. of Prob. & Parole</u>, 2003 WL 22838381 (3d Cir. Nov. 23, 2003); <u>see also</u> <u>McLaurin v. Larkins</u>, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); <u>Hollawell v. Gillis</u>, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003). However, the class of individuals awarded such relief has been limited to those who were denied parole after adoption of the 1996 changes and before <u>Winklespecht</u> clarified the fact that the amendment did not change the administration of the policies. In those cases where parole was denied after <u>Winklespecht</u>, it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices. See <u>Grob v. Pa. Bd. of Prob. & Parole</u>, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); <u>Sphar v. Pa. Bd. of Probation & Parole</u>, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.); <u>Schaeffer v. Pa. Bd. of Probation & Parole</u>, Civil No. 3:CV-04-1159, slip op. at 8 (M.D. Pa. Oct. 26, 2004)(Munley, J.).

In this case, we need address the ex post facto challenge only as it relates to the most recent parole denial of November 1, 2005. See <u>Johnson v. Lavan</u>, 2004

---

[4] Following remand in <u>Mickens-Thomas I</u>, the Board again denied parole. Our Court of Appeals found that the Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294, 310 (3d Cir. 2004) ("<u>Mickens-Thomas II</u>").

WL 1622051 (E.D.) (adopting magistrate judge's report at 2004 WL 1291973, page cite at *4 n.4); Schaeffer, supra, slip op. at 5 (finding that although Petitioner challenged seven denials of parole, the challenges to the first six denials were rendered moot by the fact that subsequent parole hearings were conducted).

The Court finds that it was not the Board's application of harsher laws or guidelines that caused the denial of parole. Initially, it is noted that Dockins' most recent parole decision came well after the Pennsylvania Supreme Court had decided Winklespecht, supra. Thus, unlike in Mickens-Thomas I, the Board had the benefit of Winklespecht prior to conducting Dockins' parole review.[5] Additionally, the Board's decision denying Dockins parole does not mention risk to public safety as a reason to for denying parole. Rather, the reasons for denying parole are more directed to the Board's perception of Dockins' rehabilitation[6]. The Board specifically enumerated multiple significant reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments: his minimization/denial of the nature and circumstances of the offenses committed; his lack of remorse for the offenses committed; and his prior history of supervision

---

[5] This is also true for Dockins' parole reviews conducted on July 24, 2003 and September 2, 2004.

[6] Even if Dockins construes the enumerated reasons as public safety oriented, this does not create an ex post facto concern as public safety has always been a parole consideration. Mickens-Thomas I, simply instructs that it is not to be given greater weight than the other numerous individualized factors to be considered by the Board. Mickens-Thomas I, 321 F.3d at 385.

failures.[7] (See Doc. 14, Board Decision of November 1, 2005). Thus, based on the Petitioner's prior criminal history, failure to accept responsibility for the offenses he has committed, and the lack of remorse for the offenses committed, it is clear that there is a substantial basis for denying parole regardless of the 1996 amendments to the Parole Act. Thus, unlike Mickens-Thomas I, the facts of record do not support a reasonable inference that the Board has concocted reasons or relied on "Stipulations" to justify applying 1996 criteria to deny Dockins' parole.

After Winklespecht, there must be at least some evidence supporting a rational inference that the Board is taking action contrary to the result that would have been obtained prior to 1996. See Shaffer v. Meyers, 338 F.Supp. 2nd 562, 565-66 (M.D. Pa. 2004). The mere denial of parole is insufficient to raise such an inference. Otherwise, a court is unable to discern that, in practice, the Board has elected to apply new policies to inmates whose crimes were committed before 1996. Where, as here, the Board articulates a rationale for denial of parole, consistent with its pre-1996 practice and policies, no inference of an ex post facto violation may be drawn.

To the extent that Dockins alleges an ex post facto claim with respect to the enactment of the mandatory sentencing provisions of 42 Pa.C.S. § 9714(g), 61

---

[7]For "nature and circumstances of the offense(s) committed," see 61 P.S. § 331.29 (Purdon's 1999)(cited in Reynolds v. Pa. Bd. of Prob. & Parole, 809 A.2d 432 n.7 (Pa.Commw. 2002).

P.S. § 331.21(b.1)[8] and the "New DNA Act", Act 57 of 2002, Petitioner's claim is without merit. Initially, the Court notes that 61 P.S. § 331.21(b.1), applies only to individuals sentenced on or after its effective date of December 21, 1998. See 1998, Dec. 21, P.L. 1077, No. 143 § 7. Consequently, 61 P.S. § 331.21(b.1) and 42 Pa.C.S. § 9714(g) could not possibly create a risk of prolonging Dockins' sentence, which was imposed long before December 21, 1998.

Moreover, Dockins' claim that the "New DNA ACT", Act 57 of 2002, which became effective on December 16, 2002, has created a significant risk of prolonging his incarceration, is equally, without merit. First, the DNA Act cited by the Petitioner cannot create a significant risk of prolong his incarceration because it has been repealed and replaced by a new statutory provision regarding DNA collection. See 44 Pa.C.S. § 2301, et seq. Additionally, § 2301 provides for DNA detection of sexual offenders and other offenders. Thus, Petitioner fails to establish how this section can create a significant risk of prolonging his incarceration for Aggravated Robbery and Burglary, Assault and Battery and technical parole violations. Clearly, Dockins fails to state an ex post fact claim with respect to this provision.

---

[8] Title 61 P.S. § 331.21(b.1) reads as follows:
The board may not release a person who is serving a sentence for a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) on parole unless the person has received instruction from the Department of Corrections on the impact of crime on victims and the community.

Finally, with respect to Dockins' claim that he should have been granted reparole after the service of his twelve months of backtime he received for his parole violations, it is well-established Pennsylvania law, that backtime is merely that part of an existing judicially imposed sentence which the Board directs a parolee to complete following recommitment for violating the conditions of parole, and which must be served before the parolee may again be eligible to be considered for a grant of reparole. Krantz v. Com., Pa. Bd. of Probation and Parole, 483 A.2d 1044 (Pa. Cmwlth. 1984). When the Board imposes backtime, it establishes a new parole eligibility date for the parolee. Upon completion of the backtime, the parolee has a right to again apply for parole and have the Board consider that application. Id. The expiration of backtime does not automatically entitle an inmate to reparole, as "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981)(quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). While "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," Sandin v. Conner, 515 U.S. 472, 483-84 (1995), the Pennsylvania Supreme Court has long held that "a denial of parole does not implicate a constitutionally protected liberty interest." Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287, 291 (Pa. 2001); see also Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d 319, 322-23 (Pa. 1999)(affirming Parole Board's discretion to grant or deny parole because "parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his

future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence"). Consequently, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

DATE: January 17, 2006               s/ William J. Nealon
                                     **United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES E. DOCKIINS, | CIVIL ACTION NO. 3:CV-05-0311 |
| Petitioner | (Judge Nealon) |
| v. | |
| PENNSYLVANIA BOARD OF, PROBATION AND PAROLE. | |
| Respondents | |

## ORDER

**NOW, THIS 17th DAY OF JANUARY, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for a writ of habeas corpus is **DENIED**.

2. Petitioner's motion for discovery (Doc. 14) is **DISMISSED** as moot.

3. The Clerk of Court shall **CLOSE** this case.

4. There is no basis for the issuance of a certificate of appealability

s/ William J. Nealon
**United States District Judge**